IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| DOUGLAS LEELON WOOTEN, <br><br> Plaintiff, <br><br> v. <br><br> PRESTON BOHANNON, <br><br> Defendant. | CIVIL ACTION NO.: 2:21-cv-92 |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion to Dismiss.  Doc. 23.  Plaintiff responded in opposition.  Doc. 28.  For the reasons that follow, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendant for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

**PROCEDURAL HISTORY AND BACKGROUND**

Plaintiff filed his Complaint on September 9, 2021, in the Middle District of Georgia, asserting claims under 28 U.S.C. § 1983.  Doc. 1.  The case was transferred to the Southern District on October 5, 2021.  Doc. 5.  This Court completed frivolity review, dismissing claims against Defendants Jeff Davis County Sheriff's Department, Bell, and McRae.  Doc. 14.  However, the Court determined Plaintiff's claims of deliberate indifference against Defendant Bohannon could proceed.  Id.

Defendant Bohannon filed this instant Motion to Dismiss on May 17, 2022.  Doc. 23.  Plaintiff filed a Response on May 27, 2022.  Doc. 28.

## DISCUSSION

### I.     Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).

Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL

3

201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.    Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists.  Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion.").  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  Ross, 578 U.S. at 642.

4

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones").  Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it."  Ross, 578 U.S. at 642.  Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust.  Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dept. of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018).  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss

[the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III.   Applying Turner

####   A.   The Jeff Davis County Jail's ("JDC") Administrative Remedies

JDC Policy 7-19 establishes the procedures for the JDC grievance system. See Doc. 23-3. Under JDC policy, an inmate must submit the official grievance form within five days of discovery of the issue or when he reasonably should have discovered the issue. Id. at 2. The Jail Administrator must review and respond within three business days of receiving the complaint. Id. The inmate then has 24 hours to file an appeal. Id. An appeal is sent to the Chief Deputy or

another individual designated by the Sheriff.  Id.  The Chief Deputy then has three business days to investigate and respond to the grievance in writing.  Id.

### B. Plaintiff Did Not Exhaust Available Administrative Remedies.

#### 1. *Plaintiff's claim does not survive under <u>Turner</u> step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.

Defendant filed affidavits that state Plaintiff was arrested and booked into JDC on January 7, 2021.  Doc. 23-5 at 2.  Later that same day, Plaintiff was transferred to the Appling County Jail ("ACJ").  Id.  Plaintiff did not a file a grievance regarding the allegations in the Complaint at either JDC or ACJ.  Id.; Doc. 23-6 at 1.

In response, Plaintiff admits he did not file a grievance, but asserts he did not know he was supposed to file a grievance at JDC.  Doc. 28 at 2.  Plaintiff does not specifically address whether he knew he could (or should) file a grievance at ACJ.  However, in his Complaint, Plaintiff acknowledges that both JDC and ACJ have grievance procedures but states "at the time [he] did not know about a grievance procedure."  Doc. 1 at 3.

Plaintiff admits he did not file a grievance about the matter and states he was unware he was supposed to file a grievance at JDC.  However, the statements in his Complaint contradict this assertion.  Plaintiff indicates was aware of the grievance procedure at both JDC and ACJ, at least prior to filing his Complaint.  Thus, it is undisputed that Plaintiff was aware of the grievance procedure before filing suit but he did not pursue the administrative remedy.  Since the facts stated by Plaintiff in the Complaint demonstrate his failure to exhaust available

7

administrative remedies prior to filing suit, Plaintiff's Complaint is subject to dismissal at <u>Turner</u> step one.

### 2. Even if Plaintiff's claim survived <u>Turner</u> step one, Plaintiff's claim would fail under <u>Turner</u> step two.

Even if Plaintiff's allegations created a factual question about the availability of the grievance process sufficient to survive <u>Turner</u> step one, Plaintiff's claim would still fail at <u>Turner</u> step two. An administrative remedy is not available if "an inmate does not know about, and cannot discover through reasonable effort, remedies or requirements for remedies by the time they are needed." <u>Goebert</u>, 510 F.3d at 1322.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." <u>Womack v. Sikes</u>, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008). Nevertheless, a presiding judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies. <u>Bryant</u>, 530 F.3d at 1374 (citing <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119–20 (9th Cir. 2003)). Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist dismissal. <u>See Womack</u>, 2008 WL 4104148 at *5 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256–57 (1986)).

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof squarely on defendants. <u>See Presley v. Scott</u>, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); <u>Berger</u>, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); <u>Whatley I</u>, 802 F.3d at 1209; <u>Turner</u>, 541 F.3d at 1082–83; <u>see also</u>

Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted argument or evidence on the issue of exhaustion and the availability of the grievance process. Therefore, the parties have had a sufficient opportunity to develop the record.

Defendant has carried his burden to show the grievance procedure was available to Plaintiff and Plaintiff could have discovered the procedure with reasonable effort. Defendant provided an affidavit signed by Chief Deputy Keith Rea of Jeff Davis County, stating inmates are informed of the grievance procedures through the inmate handbook and affirming Plaintiff did not seek to obtain a grievance form. Doc. 23-5 at 1–2. A copy of the JDC prison handbook was provided, where the grievance procedure is explained in detail. Doc. 23-4 at 25–27. This

evidence shows Plaintiff was informed about the grievance procedure. Even if Plaintiff did not actually know about the procedure, he could have learned of the grievance requirements if he had made a reasonable effort to do so. Thus, regardless of Plaintiff's actual knowledge of the grievance procedure, it was available to him and Plaintiff was required to avail himself of the process prior to filing suit.

Even if Plaintiff was unable to file a grievance while at JDC or did not know he could file a greivance due to the short period he spent at JDC, he was equally capable of filing a grievance at ACJ. Indeed, Plaintiff acknowledges in his Complaint that ACJ has a grievance process. Doc. 1 at 3. However, as explained in the ACJ's Jail Administrator affidavit, Plaintiff did not file a grievance. Doc. 23-6. By not utilizing the available grievance procedures, Plaintiff failed to exhaust his administrative remedies.

In sum, the facts stated in Plaintiff's Complaint demonstrate a failure to exhaust on their face, and, thus, Plaintiff's Complaint is subject to dismissal at <u>Turner</u> step one. However, even if the Complaint was not subject to dismissal at step one, Defendant has carried his burden to show Plaintiff did not exhaust available administrative remedies under <u>Turner</u> step two. Accordingly, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss and **DISMISS without prejudice** Plaintiff's claims against Defendant.

### IV.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. <u>See</u> Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendant for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

11

Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 22nd day of June, 2023.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA